UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**SAKEENA BARRETT**, individually,
and on behalf of others similarly situated,        Case No.

        Plaintiff,

vs.

**NORTHSHORE UNIVERSITY
HEALTHSYSTEM**,

        Defendant.

---

## COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, SAKEENA BARRETT, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective/Class Action Complaint against Defendant, NORTHSHORE UNIVERSITY HEALTHSYSTEM, and states as follows:

## INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, SAKEENA BARRETT (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant, NORTHSHORE UNIVERSITY HEALTHSYSTEM (hereinafter referred to as "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law, §§ 820 ILCS 105/1 *et. seq.* ("IMWL"), the Illinois Wage Payment and Collection Act, §§ 820 ILCS 115/1 *et seq.* ("IWPCA"), and common law.

2.     Defendant is an integrated healthcare delivery system serving patients throughout the Chicago metropolitan area. Defendant operates four Hospitals-Evanston, Glenbrook,

Highland Park and Skokie—as well as NorthShore Medical Group with more than 70 offices and more than 800 primary and specialty care physicians, the Research Institute and Foundation. In total, the health system employs more than 8,000 people.

3. Plaintiff and similarly situated employees worked as "Patient Access Representatives" ("Representatives") at Defendant's Practice Support Call Center, located at 4901 Searle Parkway in Skokie, Illinois.

4. Defendant's website describes the Patient Access Representative position as follows:

> This is an entry level position responsible for professionally answering phone calls from patients interested in scheduling an appointment with a physician, scheduling a medical test, or answering general questions related to NorthShore's health services. The Patient Access Representative (PAR), is also responsible for patient education in regards to our available online services. They are expected to use our online knowledge management tool, including EPIC, as a resource to assist with patient calls and issue resolution. This is a call center environment and work hours can include evenings, nights, and weekends.

**Exhibit 1,** Job Description for Patient Access Representative.[1]

5. In order to perform their jobs, Defendant's Representatives are required to boot up their computers and start-up and log-in to various computer programs, software programs, and applications before the start of their scheduled shifts. This process takes approximately 8 to 24 minutes per shift. In addition, Representatives spend 3 to 5 minutes before the start of their scheduled shifts reading work-related e-mails. In total, Representatives typically spend 11 to 29 minutes before the start of their scheduled shifts booting up their computers, starting up and logging in to various computer programs, software programs, and applications, and reading work-related e-mails.

---

[1] Available at:
https://northshore.taleo.net/careersection/northshore+university+health+systems+-+external/jobdetail.ftl?job=62290&tz=GMT-05%3A00 (last visited December 9, 2017)

6.      Defendant has at all relevant times maintained, and continues to maintain, a common policy of failing to pay Representatives for the time they spend before the start of their scheduled shifts performing the foregoing pre-shift activities, all of which direct benefit Defendant and are essential to their responsibilities as Representatives.

7.      Specifically, Defendant prohibits its Representatives from clocking in more than seven minutes prior to the start of their scheduled shifts. Because it takes Representatives 8 to 24 minutes to boot up their computers and start-up and log-in to various computer programs, software programs, and applications, Defendant's seven-minute rule compels them to perform these activities *before* clocking into Defendant's timekeeping system.

8.      Further, Representatives are not even compensated for the time they spend *after* clocking in, because Defendant rounds their time to the nearest quarter-hour interval. Representatives who clock in at 8:53 a.m., for example, are not paid until 9:00 a.m. Thus, the work Representatives typically perform in the seven minutes leading up the start of their scheduled shifts, (i.e. starting up and logging in to various computer programs, software programs, and applications and reading work-related e-mails), is not compensated. Defendant's policy does not qualify as a permissible rounding under the FLSA, *see* 29 C.F.R. § 785.48(b), because Defendant's seven-minute rule compels Representatives to clock in closer to the following quarter-hour internal (i.e. the start of their scheduled shift time), than to the preceding quarter-hour interval. Thus, this arrangement does not "average[] out so that the employees are fully compensated for all the time they actually work," and instead "results, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *Id*.

9.      As a result of Defendant's unlawful common policies, Representatives are

deprived of approximately 11 to 29 minutes per day, including time in excess of 40 hours in a workweek, in violation of the FLSA, the IMWL, the IWPCA, and Defendant's contractual obligation to pay Representatives for all hours worked.

10.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry.   One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."   Fact Sheet #64 at p. 2.The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities:   "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

11.     Defendant knew or could have easily determined how long it took for its Representatives to complete the pre-shift start-up/log-in process and Defendant could have properly compensated Plaintiff and the Class for the pre-shift start-up/log-in work they performed, but did not.

12.     The named Plaintiff is a former Representative who worked for Defendant on an hourly basis in Defendant's Skokie, Illinois Practice Support Call Center.

13.     Plaintiff brings this action on behalf of herself and all other similarly situated hourly Representative employees of Defendant to obtain declaratory relief and recover unpaid

wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

14.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

15.    Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

16.    Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.   Defendant's Representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

17.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts as their federal claims.

18.    This court has personal jurisdiction over Defendant because its company headquarters is located within this district, in Evanston, Illinois.

19.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in this district, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this district.

## PARTIES

20.    Plaintiff is a resident of Chicago, Illinois, and was employed by Defendant as an hourly Representative from November 2016 through November 2017. Plaintiff signed a consent form to join this lawsuit, which is attached hereto as **Exhibit 2.**

21.     Defendant is an Illinois not-for-profit corporation with a headquarters located at 2650 Ridge Ave., Evanston, Illinois.

## GENERAL ALLEGATIONS

22.     Plaintiff served as a Representative for Defendant at its Practice Support Call Center in Skokie, Illinois from about November 2016 through November 2017. During her employment, Plaintiff earned $17.50 per hour.

23.     Throughout her employment with Defendant, Plaintiff regularly worked off-the-clock as part of her job as a Representative.

24.     In order to perform their jobs, Plaintiff and all other Representatives were required to boot up their computers and start-up and log-in to various computer programs, software programs, and applications before the start of their scheduled shifts. This process took Plaintiff and all other Representatives approximately 8 to 24 minutes per shift.

25.     In addition, Plaintiff and all other Representatives typically spent 3 to 5 minutes before the start of their scheduled shifts reading work-related e-mails.

26.     The time Plaintiff and all other Representatives spent booting up their computers, starting up and logging in to various computer programs, software programs, and applications, and reading work-related e-mails benefited Defendant and was essential to their responsibilities as Representatives.

27.     Defendant prohibited Plaintiff and all other Representatives from clocking in more than seven minutes prior to the start of their scheduled shifts. Because it took Plaintiff and all other Representatives 8 to 24 minutes to boot up their computers and start-up and log-in to various computer programs, software programs, and applications, Defendant's seven-minute rule compelled them to perform these activities *before* clocking into Defendant's timekeeping

system.

28.    Further, Plaintiff and all other Representatives are not even compensated for the time they spend *after* clocking in, because Defendant rounds their time to the nearest quarter-hour interval.

29.    For example, Plaintiff's shifts were typically scheduled to start at 9:00 a.m. Because she was compelled by Defendant's seven-minute rule to clock in no earlier than 8:53 a.m., on most shifts Plaintiff's clock-in time was rounded to 9:00 a.m., thus depriving her of pay for the work she typically performed between 8:53 a.m. and 9:00 a.m., i.e. starting up and logging in to various computer programs, software programs, and applications and reading work-related e-mails.

30.    Defendant's rounding policy did not result in Plaintiff's clock-in time being rounded backward in time to 8:45 a.m., because for that to happen Plaintiff would have to clock in between 8:46 a.m. and 8:52 a.m. Although Plaintiff typically performed compensable pre-shift activities from 8:46 a.m. and 8:52 a.m., Defendant's seven-minute rule compelled her to clock in no earlier than 8:53 a.m.

31.    Thus, this arrangement did not "average[] out so that the [Plaintiff was] fully compensated for all the time [she] actually work[ed]," and instead "result[ed], over a period of time, in failure to compensate the [Plaintiff] properly for all the time [she] [] actually worked." *Id*.

32.    Defendant's policy does not qualify as a permissible rounding under the FLSA, *see* 29 C.F.R. § 785.48(b).

33.    As a result of Defendant's unlawful common policies, Plaintiff and all other Representatives were deprived of approximately 11 to 29 minutes per day.

34.     Because Plaintiff typically worked five shifts per week, she was not paid for 55 to 145 minutes per week, including time in excess of 40 hours in a workweek, in violation of the FLSA, the IMWL, the IWPCA, and Defendant's contractual obligation to pay Representatives for all hours worked.

35.     For example, in the bi-weekly pay period of July 16, 2017 through July 29, 2017:

> ➤ Plaintiff was paid for 40 hours in two consecutive workweeks;

> ➤ The 40 hours for which Plaintiff was paid in each of these weeks ***did not include*** the additional 55 to 145 minutes she spent before the start of her scheduled shifts booting up her computer, starting up and logging in to various computer programs, software programs, and applications, and reading work-related e-mails.

> ➤ Defendant should have paid Plaintiff for the additional 55 to 145 minutes of work she performed in each workweek at 1.5 of her regular rate of pay, but instead did pay Plaintiff any compensation for hours worked in excess of 40 in either workweek.

36.     At all relevant times, Defendant was Plaintiff's "employer" and Defendant directed and directly benefited from the work performed by Plaintiff and all other Representatives before the start of their scheduled shifts.

37.     At all relevant times, Defendant controlled Plaintiff's and all other Representatives' work schedule, duties, protocols, applications, assignments, and employment conditions.

38.     At all relevant times, Defendant was able to track the amount of time that Plaintiff and all other Representatives spent in connection with the pre-shift start-up/log-in process as

well as reading work-related e-mails; however, Defendant failed to document, track, or pay Plaintiff and the putative Collective for the pre-shift work that they performed in connection with each shift.

39.     At all relevant times, Defendant's policies and practices deprived Plaintiff and the putative Collective of wages owed for the pre-shift activities Plaintiff and the putative Collective performed.   Because Plaintiff and the putative Collective typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived Plaintiff and the putative Collective of overtime pay at a rate of 1.5 times their regular rate of pay, as required under the FLSA.

40.     Defendant knew or should have known that the time Plaintiff and all other Representatives' spent before the start of their scheduled shifts booting up their computers, starting up and logging in to various computer programs, software programs, and applications, and reading work-related e-mails is compensable under the FLSA, IMWL, IWPCA, and the common law.

## COLLECTIVE ACTION ALLEGATIONS

41.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *All current and former hourly Patient Access Representatives who worked for Defendant in any of its call centers in the United States at any time within the three years preceding the commencement of this action and the date of judgment.*

(hereinafter referred to as the "Collective").   Plaintiff reserves the right to amend this definition as necessary.

42.     Excluded from the Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

43.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).   The Collective of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

44.     The employment relationships between Defendant and every Collective member are the same and differ only in name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift time owed to each employee – do not vary substantially from Collective member to Collective member.

45.     The key legal issues are also the same for every Collective member, to wit: whether the 11 to 29 minutes of pre-shift time is compensable under the FLSA.

46.     Plaintiff estimates that the Collective, including both current and former employees over the relevant period, will include hundreds of members. The precise number of Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> All current and former hourly Patient Access Representatives who worked for Defendant in any of its call centers in Illinois at any time within the three years preceding the commencement of this action and the date of judgment.

(hereinafter referred to as the "Rule 23 Illinois Class").   Plaintiff reserves the right to amend this definition as necessary.

48.     The members of the Rule 23 Illinois Class are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical.   Plaintiff reasonably estimates that there are hundreds of Rule 23 Illinois Class members.   Rule 23 Illinois Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

49.     There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class.   These common legal and factual questions include, but are not limited to, the following:

a.   Whether the pre-shift time Rule 23 Illinois Class members spend on pre-shift activities prior to "clocking in" for each shift is compensable time;

b.   Whether Defendant's rounding policy is permissible under the IMWL; and

c.   Whether Rule 23 Illinois Class members are owed wages for time spent performing pre-shift activities, and if so, the appropriate amount thereof.

50.     Plaintiff's claims are typical of those of the Rule 23 Illinois Class in that she and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.   Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

51.     Plaintiff will fully and adequately protect the interests of the Rule 23 Illinois Class and she has retained counsel who are qualified and experienced in the prosecution of Illinois wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class.

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

53.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

54.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.   *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

55.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class and declaratory relief is appropriate in this case with respect to the Rule 23 Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**<u>VIOLATION OF THE FAIR LABOR STANDARDS ACT,</u>**
**<u>29 U.S.C. § 201, *et seq.*</u>**

56.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

57.     At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

58.     Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

59.     At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

60.     Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

61.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

62.     At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Collective members to perform 11 to 29 minutes of pre-shift work activities per shift, but failed to pay these employees the federally mandated minimum wage or overtime compensation for such time.

63.     The pre-shift off-the-clock work performed by Plaintiff and all similarly situated Collective members every shift was an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

64.     In workweeks where Plaintiff and other Collective members worked 40 hours or more, the uncompensated pre-shift time, Defendant should have been paid them at the federally mandated rate of 150% of each employee's regularly hourly wage.   29 U.S.C. § 207.

65.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its Representatives to complete the pre-shift activities and Defendant could have properly compensated Plaintiff and the Collective for such

time, but did not.

66.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Illinois Class Action)**
**VIOLATIONS OF THE ILLINOIS MINIMUM WAGE LAW,**
**§§ 820 ILCS 105/1 *et. seq*.**

67.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

68.     At all times relevant to the action, Defendant was an employer covered by the mandates of the Illinois Minimum Wage Law, and Plaintiff and the Rule 23 Illinois Class are employees entitled to the IMWL's protections.

69.     The Illinois Minimum Wage Law, §§ 820 ILCS 105/1 *et. seq*. requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay of hours worked in excess of forty (40) per week. *See* § 820 ILCS 105/4; 820 ILCS 105/4a.

70.     820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid."

71.     Defendant violated the IMWL by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint, including hours worked in excess of 40 in a workweek.

14

72.     As a result, Plaintiff and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

**COUNT III**
**(Rule 23 Illinois Class Action)**
**VIOLATIONS OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT,**
**§§ 820 ILCS 115/1 _et seq._**

73.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

74.     At all times relevant to the action, Defendant was an employer covered by the mandates of the Illinois Wage Payment and Collection Act, and Plaintiff and the Rule 23 Illinois Class are employees entitled to the IWPCA's protections.

75.     The Illinois Wage Payment and Collection Act, §§ 820 ILCS 115/1 _et seq._ requires that "[a]ll wages earned by any employee … shall be paid." 820 ILCS 115/4.

76.      Under 820 ILCS 115/14(a), an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

77.     Defendant violated the IWPCA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

78.     As a result, Plaintiff and the Rule 23 Illinois Class have and will continue to suffer

loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IWPCA at an amount to be proven at trial.

**Count IV**
**(Rule 23 Illinois Class Action)**
**<u>BREACH OF CONTRACT</u>**

79.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

80.     At all times relevant to this action, Defendant had a contract with Plaintiff and every other Rule 23 Illinois Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

81.     Each Rule 23 Illinois Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

82.     Plaintiff and every other Rule 23 Illinois Class member performed under the contract by doing their jobs and carrying out the pre-shift activities that Defendant required or accepted.

83.     By not paying Plaintiffs and every other Rule 23 Illinois Class member the agreed upon hourly wage for the pre-shift start-up/log-in activities performed prior to clocking in for each shift, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Illinois Class.

84.     Plaintiff's and the Rule 23 Illinois Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

85.     Defendant also breached its duty of good faith and fair dealing by failing to keep

track of the time Plaintiff and other Rule 23 Illinois Class members spent doing pre-shift activities, which is a fundamental part of an "employer's job."

86.     As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiff and every other member of the Rule 23 Illinois Class have been damaged, in an amount to be determined at trial.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, SAKEENA BARRETT, requests the following relief:

a.     Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.     Certifying this action as a class action (for the Rule 23 Illinois Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims (Counts II, III, and IV);

c.     Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.     Designating Plaintiff as the representative of the FLSA collective action Class and the Rule 23 Illinois Class, and undersigned counsel as Class counsel for the same;

e.     Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.     Declaring Defendant's violation of the FLSA was willful;

g.     Declaring Defendant violated the IMWL and that said violations were intentional, willfully oppressive, fraudulent and malicious;

h.     Declaring Defendant violated IWPCA and that said violations were intentional, willfully oppressive, fraudulent and malicious;

i.     Declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Illinois Class by failing to pay them for each hour they

worked at a pre-established (contractual) regularly hourly rate;

j.      Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the collective action Class and the Rule 23 Illinois Class, the full amount of damages and liquidated damages available by law;

k.      Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

l.      Awarding pre- and post-judgment interest to Plaintiff on these damages; and

m.      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, SAKEENA BARRETT, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated:   December 18, 2017

/s Jason T. Brown_____
Jason T. Brown (Local Counsel, IL Bar No. 6318697)
Zijian Guan (will *pro hac vice*)
Nicholas Conlon (will *pro hac vice*)
JTB LAW GROUP, LLC
500 N. Michigan Ave., Suite 600
Chicago, Illinois 60611
Phone: (877) 561-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
cocozguan@jtblawgroup.com

Jason J. Thompson (will *pro hac vice*)
Charles R. Ash , IV (will *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor

Southfield, Michigan 48076
Phone: (248) 355-0300
JThompson@sommerspc.com
CRAsh@sommerspc.com

*Attorneys for Plaintiffs*