UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**SAKEENA BARRETT**, individually,
and on behalf of others similarly situated,

          Plaintiff,

vs.

**NORTHSHORE UNIVERSITY
HEALTHSYSTEM**,

          Defendant.

Case No. 1:17-cv-09088

Honorable Andrea R. Wood

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S PRE-DISCOVERY
MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND COURT-
SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS, PURSUANT TO 29
U.S.C. §216(b)**

**JTB LAW GROUP, LLC**

Jason T. Brown (IL Bar No.: 6318697)
Nicholas Conlon *(Admitted Pro Hac Vice)*
Zijian Guan *(Admitted Pro Hac Vice)*
500 N. Michigan Ave., Suite 600
Chicago, Illinois 60611
Phone: (877) 561-0000
Fax: (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
cocozguan@jtblawgroup.com

**SOMMERS SCHWARTZ, P.C.**

Matthew L. Turner *(Pending Pro Hac Vice)*
Charles R. Ash, IV *(Pending Pro Hac Vice)*
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
MTurner@sommerspc.com
crash@sommerspc.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.    SUMMARY ......................................................................................................... 1

II.    RELEVANT FACTS ............................................................................................ 2

  A.  THE PARTIES ................................................................................................. 2

  B.  DEFENDANT MAINTAINED A COMMON POLICY AND PRACTICE OF FAILING
  TO PAY ITS PATIENT ACCESS REPRESENTATIVES (PARs) FOR COMPENSABLE
  OFF-THE-CLOCK WORK .................................................................................. 3

III.    LAW AND ARGUMENT .................................................................................... 6

  A.  THE FLSA AUTHORIZES COLLECTIVE ACTIONS AND NOTICE TO SIMILARLY
  SITUATED EMPLOYEES ................................................................................... 6

  B.  THE SEVENTH CIRCUIT APPLIES A LENIENT STANDARD FOR
  CONDITIONALLY CERTIFYING A FLSA COLLECTIVE ACTION ................................ 7

  C.  PLAINTIFF'S ALLEGATIONS EASILY SATISFY THE STANDARD FOR
  CONDITIONAL CERTIFICATION ........................................................................ 9

  D.  THIS COURT IS AUTHORIZED TO ISSUE NOTICE TO POTENTIAL OPT-IN
  PLAINTIFFS AND SHOULD DO SO IMMEDIATELY ............................................. 11

  E.  PLAINTIFF IS ENTITLED TO OBTAIN A LIST OF ALL POTENTIAL COLLECTIVE
  MEMBERS .................................................................................................... 12

  F.  THE COURT SHOULD GRANT A SIXTY (60) DAY OPT-IN PERIOD FOR
  ADDITIONAL PLAINTIFFS TO JOIN THIS LITIGATION ....................................... 15

IV.    CONCLUSION ................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Cases**

*Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) ...................................................... 7

*Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625, 2015 WL 4240985 (S.D.N.Y. July 13, 2015) ........................................................................................................................................... 14

*Biddings v. Lake Cty.*, 2009 WL 2175584 (N.D. Ind. July 15, 2009).............................................. 7

*Binissia v. ABM Indus., Inc.*, 2014 U.S. Dist. LEXIS 24160  (N.D. Ill. Feb. 26, 2014)......... 10, 11

*Black v. P.F. Chang's China Bistro, Inc.*, 2017 WL 2080408 (N.D. Ill. May 15, 2017) ............. 13

*Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838 (N.D. Ill. 2016)............................. 12, 13

*Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365 (N.D.W. Va. 2012) ..................................... 11

*Cooper v. E. Coast Assemblers, Inc.*, 2013 U.S. Dist. LEXIS 10435 (S.D. Fla. Jan. 25, 2013) .. 12

*Dempsey v.  Jason's Premier Pumping Services, LLC*, No. 1:15-cv-703, 2015 WL 13121134 (D. Colo. Nov. 11, 2015) ................................................................................................................. 14

*Eley v. Stadium Grp., LLC*, Civil Action No. 14–cv–1594 (KBJ), 2015 WL 5611331 (D.D.C. Sept. 22, 2015)........................................................................................................................... 14

*Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819 (E.D. Mich. 2009)................................. 11

*Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042 (N.D. Ill. 2003) ........................................... 8

*Garza v. Chicago Transit Auth.*, 2001 WL 503036 (N.D. Ill. May 8, 2001)................................ 7

*Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867 (N.D. Ill. 2017) ......................................... 12

*Hoffman v. Sbarro, Inc*, 982 F.Supp. 249 (S.D.N.Y. 1997) ......................................................... 7

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)..................................................................................................................................... 6, 11

*Holmes v. Sid's Sealants, LLC*, No. 16-cv-821-wmc, 2017 U.S. Dist. LEXIS 194833 (W.D. Wis. Nov. 28, 2017) ............................................................................................................................. 8

*Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126 (N.D. Ill. Jan. 20, 2009)........................................................................................................................................... 8

*Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F.Supp.3d 707 (D.S.C. 2015) ..................... 14

*Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845 (N.D. Ill. 2008)....................................................9

*Lamarr v. Illinois Bell Tel. Co.*, 2017 WL 2264348 (N.D. Ill. May 24, 2017) ............................9

*Landry v. Swire Oilfield Servs.*, No. 16-621, 2017 WL 1709695 (D.N.M. May 2, 2017) ..... 13, 14

*Larsen v. Clearchoice Mobility, Inc.*, 2011 WL 3047484 (N.D. Ill. July 25, 2011)....................12

*Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1240-1241 (S.D. Ala. 2008)...............................11

*Martin v. Sprint/United Mgmt. Co.*, 2016 U.S. Dist. LEXIS 352 (S.D.N.Y. Jan. 4, 2016)...... 4, 14

*McClean v. Health Sys., Inc.*, 2011 WL 6153091 (W.D. Mo. Dec. 12, 2011) ............................11

*McGarry v. Chemix Energy Servs., LLC*, No. 2:15-cv-496 (S.D. Tex. July 19, 2016) ...............14

*Mielke v. Laidlaw Transit, Inc.*, 313 F.Supp.2d 759 (N.D. Ill. 2004)..............................................7

*Morris v. Lettire Constr., Corp.*, 896 F. Supp. 2d 265 (S.D.N.Y. 2012)......................................13

*Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F.Supp.2d 745 (N.D. Ill. 2011) .............. 7, 10, 11, 15

*Owens v. GLH Capital Enter., Inc.*, 2017 WL 2985600 (S.D. Ill. July 13, 2017)........................14

*Palma v. Metropcs Wireless, Inc.*, 2014 WL 235478 (M.D. Fla. Jan. 22, 2014).........................12

*Phelps v. MC Commc'ns, Inc.*, 2011 U.S. Dist. LEXIS 84428 (D. Nev. Aug. 1, 2011) ..............13

*Regan v. City of Hanahan*, 2017 WL 1386334, 2:16-cv-1077 (D.S.C. Apr. 17, 2017) ...............14

Ritz v. Mike Rory Corp., 2013 WL 1799974 (E.D.N.Y. Apr. 30, 2013) .....................................12

*Rottman v. Old Second Bancorp, Inc.,* 735 F.Supp.2d 988 (N.D. Ill. 2010) .................................8

*Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930 (N.D. Ill. 2008) ...............................7, 8, 9, 10

*Sharpe v. APAC Customer Servs., Inc.*, 2010 WL 135168 (W.D. Wis. Jan. 11, 2010).................9

*Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298 (D. Kan. 2010) .............................................11

*Smallwood v. Illinois Bell Telephone Co.*, 710 F.Supp.2d 746 (N.D. Ill. 2010) ....................7, 15

*Smith v. Safety-Kleen Sys.*, Civil Action No. 10 C 6574, 2011 U.S. Dist. LEXIS 40670
(N.D. Ill. Apr. 14, 2011) .....................................................................................................8, 9, 11

*Soto v. Wings 'R US Romeoville, Inc.*, 2016 WL 4701444 (N.D. Ill. Sept. 8, 2016) ..................13

*Spallone v. Soho University, Inc.*, No. 4:15-cv-1622 (Feb. 9, 2016);........................................... 14

*Stuven v. Texas De Brazil (Tampa) Corp.*, 2013 U.S. Dist. LEXIS 22240 (M.D. Fla. Feb. 19, 2013) ............................................................................................................... 12

*Swarthout v. Ryla Teleservices, Inc.*, 2011 WL 6152347 (N.D. Ind. Dec. 12, 2011).................... 9

*Vasto v. Credico (USA) LLC*, 2016 WL 2658172 (S.D.N.Y. May 5, 2016)................................ 14

*Watson v. Jimmy John's, LLC*, 2016 WL 106333 (N.D. Ill. Jan. 5, 2016) .................................. 12

*Zolkos v. Scriptfleet, Inc.*, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014)..................................... 13

**Statutes**

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq* ........................................... 1, 6

**Regulations**

29 C.F.R. § 785.48 ........................................................................................................... 4

## I. <u>SUMMARY</u>

Plaintiff Sakeena Barrett ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully requests that the Court:

(1) Conditionally certify a collective action for unpaid overtime wages under §216(b) of the FLSA on behalf of:

> *All current and former hourly Patient Access Representatives employed by Northshore University Health System ("Defendant") at any time from December 19, 2014 through the date of judgment in this case* (the proposed "Collective");

(2) Require Defendant to identify all putative members of the proposed Collective by providing a list of their names, last known addresses, dates of employment, phone numbers, and e-mail addresses in electronic and importable format, *e.g.*, a Microsoft Excel spreadsheet, within 14 days of the entry of the order;

(3) Permit Plaintiff's counsel to send Court-approved Notice of this action (attached as *Exhibit 1*) to putative members of the proposed Collective via US Mail and email;

(4) Permit Plaintiff's counsel to send the shortened reminder Notice (attached as *Exhibit 2*) to putative members of the Collective via text message thirty (30) days into the opt-in period; and

(5) Approve a sixty-day (60) day opt-in period from the date the Court-approved Notice is sent during which putative members of the Collective may join this case by returning their written consents.

The Court should grant the relief Plaintiff seeks because:

(1) Plaintiff has identified Defendant's common scheme and policy of failing to pay wages at the state and federally required overtime rate of time and one-half for all hours worked in excess of 40 hours per work week;

(2) Plaintiff has identified Defendant's uniform policy that requires Patient Access Representatives to perform off-the-clock work in violation of the FLSA;

(3) The Seventh Circuit applies a lenient standard for conditional certification of a FLSA collective action; and

(4) Without the requested Court-approved Notice, many putative plaintiffs will never learn about this case and their right to participate; as a result, their viable claims would be silently eroded away under the FLSA statute of limitations.

## II.     RELEVANT FACTS

### A. THE PARTIES

1.    Defendant

Defendant Northshore University Health System ("Defendant") is an integrated healthcare delivery system serving patients throughout the Chicago metropolitan area. (Complaint, Doc. 1, ¶ 2.) Defendant operates four hospitals: Evanston, Glenbrook, Highland Park, and Skokie – as well as Northshore Medical Group with more than 70 offices and more than 800 primary and specialty care physicians. (*Id.*) In total, the health system employs more than 8,000 people.[1] (*Id.*)

2.    Plaintiff

Plaintiff was employed by Defendant as an hourly paid Patient Access Representative ("PAR") at the company's Practice Support Call Center, located in Skokie, Illinois. (Doc. 1, ¶ 12; ***Exhibit 3***, Declaration of Sakeena Barrett ("Barrett Decl."), ¶ 2.) The PARs worked in a large office concourse next to one another. (Barrett Decl., ¶ 6.) As such, Plaintiff has direct, first-hand knowledge of the activities and practices of the other PARs. (*Id.*) Plaintiff also completed group training and orientation with many other PARs. (*Id.*, ¶¶ 2, 7, 8, 14.) Plaintiff has concurrently filed a declaration in support of the present motion, which makes a factual showing that PARs are subject to Defendant's company-wide common policies and practices of not compensating for pre-shift work. (*See generally*, Barrett Decl.)

PARs perform the same basic job duties, described in the position description on Defendant's website as follows:

> This is an entry level position responsible for professionally answer phone calls from patients interested in scheduling an appointment with a physician,

---

[1] This information is also available on Defendant's website at https://www.northshore.org/careers/working-at-northshore/ (last visited on February 27, 2018).

> scheduling a medical test, or answering general questions related to NorthShore's health services. The Patient Access Representative (PAR), is also responsible for patient education in regards to our available online services. They are expected to use our online knowledge management tool, including EPIC, as a resource to assist with patient calls and issue resolution. This is a call center environment and work hours can include evenings, nights, and weekends.

(Doc. 1, ¶ 4; Doc. 1-1, PAR Position Description; *see also* Barret Decl., ***Exhibit A***) Plaintiff's declaration verifies that her job duties as a PAR conformed to those duties included in the position description. (Barrett Decl., ¶¶ 3, 6.) PARs used multiple computer networks, software programs, and applications in the course of performing their job responsibilities; these networks, programs, and applications were an integral and important part of the PARs work, as they could not perform their job without them. (Doc. 1, ¶¶ 24, 63; Barrett Decl., ¶ 8.) PARs were paid on an hourly basis. Plaintiff's hourly rate was $17.50 per hour. (Barrett Decl., ¶ 5.) Plaintiff estimates that there were several hundred other PARs employed at the Practice Support Call Center in Skokie, Illinois. (*Id*. ¶ 6.)

## B. DEFENDANT MAINTAINED A COMMON POLICY AND PRACTICE OF FAILING TO PAY ITS PATIENT ACCESS REPRESENTATIVES (PARs) FOR COMPENSABLE OFF-THE-CLOCK WORK

Plaintiff alleges four common policies that worked in concert to deprive her and other PARs of overtime pay:

- PARs had to be ready to start handling calls at the start of their scheduled shifts; (*Id*., ¶ 7);

- In order to be ready to start handling calls, PARs had to boot up their work computers and start-up and log in to various computer programs, software programs, and applications (*Id*., ¶ 7; *see also* Answer, Doc. 17, at ¶ 24 (admitting that "Plaintiff and other Patient Access Representatives had to access a computer and software applications at the start of their scheduled shifts.")); 

- Defendant rounds PARs' time to the nearest fifteen-minute increment (Barrett Decl., ¶ 13; Answer, Doc. 17, ¶ 8.); and

- Defendant prohibits PARs from clocking in more than seven (7) minutes prior to their scheduled shift time. (Barrett Decl., ¶ 14; *see also Exhibit 4*, Defendant's Mandatory Initial Disclosures, at 5 (conceding that Defendant's "general rule is that Patient Access Representatives generally should not clock in more than seven minutes before the start of their shifts")).

These policies were communicated to Plaintiff by "manager[s] that trained [her] and many other Patient Access Representatives during the orientation process…." (*Id.* at ¶¶ , 8, 14.)

These policies deprived PARs of overtime compensation in two ways. First, the seven-minute period was not enough time for PARs to complete the pre-shift process of booting up their computers and starting up/logging in to various computer programs, software programs, and applications, such as Citrix, EPIC, Outlook, Screen Capture, and Softphone.[2] (*Id.*, ¶ 11; Doc. 1, ¶ 24.) This process took at least 11 minutes on most days, (Barrett Decl., ¶¶ 8-9; Doc. 1, ¶¶ 24-25) and had to be complete by the start of PAR's scheduled shift. (Barrett Decl., ¶ 8; Doc. 1, ¶ 26.) Additionally, PARs spent 3 to 5 minutes off-the-clock before the start of their shifts reading emails with information and instruction regarding their job duties and responsibilities. (Barrett Decl., ¶ 9.) Defendant used uniform adherence and attendance policies against PARs to pressure them into performing off-the-clock work activities. (*Id.*, ¶ 10.)

Second, the seven-minute window in which PARs were ostensibly allowed to be clocked in was illusory, as Defendant rounded this time out of their pay. Defendant used its seven-minute policy to systematically guarantee that PARs clock-in time would always fall on the short side of the fifteen-minute period, and as a result the arrangement did not "average[] out so that the [Plaintiff was] fully compensated for all the time [she] actually work[ed]," and instead "result[ed], over a period of time, in failure to compensate the [Plaintiff] properly for all the time

---

[2] The position overview attached to Plaintiff's declaration expressly states the expectation that EPIC, an "online knowledge management tool," be used for patient calls and issue resolution.

4

[she] [] actually worked."[3]  (*Id.*, ¶ 13; Doc. 1, ¶¶ 26-31.)

In her declaration, Plaintiff explains that there were many shifts in which she clocked in between 8:53 A.M. and 9:00 A.M., despite beginning the boot-up process before 8:53 A.M., and her start-time was rounded to 9:00 A.M., thus depriving her of several minutes of pay.  (Barrett Decl., ¶ 13.)  In order to have her start-time rounded to an earlier time (i.e. 8:45 A.M.), she would have had to clock in at or before 8:52 A.M., but Defendant prevented her from doing this by enforcing the "seven minute rule." (*Id.*)  On the other hand, if she clocked in at 9:01 A.M., she would be in violation of Defendant's attendance policy and therefore subject to discipline.

Plaintiff's declaration contains ample evidence that Defendant's policies were common to all PARs. As noted above, these policies were communicated to her by "manager[s] that trained [her] and many other Patient Access Representatives during the orientation process…." (*Id.* at ¶¶ 8, 14.) Further, working in a "large office concourse next to" many other PARs, (*id.* at ¶ 6) it was readily observable to Plaintiff that other PARs would "arriv[e] at or around the same time as [her] each morning and boot[] up their computers, start[] up and log[] in to the same computer programs, software programs, and applications that [she] used, and read[] work-related e-mails." (*Id.*, ¶ 11.) Plaintiff  "learned from conversations with other [PARs] that like [her], they also booted up their computers, started up and logged in to computer programs, software programs, and applications, and read work-related e-mails before clocking in…." (*Id.* at ¶ 12.)

Accordingly, Plaintiff alleges that "most of Northshore's Patient Access Representatives were not paid for the time spent before their shifts…." (*Id.* at ¶ 14.) Further, Plaintiff states that "[t]hese policies were still in effect when [her] employment with Northshore ended in November

---

[3] 29 C.F.R. § 785.48 permits time rounding but imposes requirements the time rounding policy must meet.  Specifically, the policy must average out so the employee is fully compensated for the time they actually work and must not result, over a period of time, in the failure to compensate the employee properly for all the time they have actually worked.

2017." As set forth below, a low standard applies, as no discovery has occurred, and Plaintiff merely seeks permission to send notice to PARs who worked at the same call center as Plaintiff. The facts set forth above are more than sufficient.

### III.   LAW AND ARGUMENT

#### A.  THE FLSA AUTHORIZES COLLECTIVE ACTIONS AND NOTICE TO SIMILARLY SITUATED EMPLOYEES

The FLSA provides that "no employer shall employ any of his employees . . . for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *See* 29 U.S.C. § 207(a). An employer who violates this requirement can be sued by the affected employees collectively. 29 U.S.C. § 216(b).  Moreover, where the employer's violations are alleged to be widespread, the FLSA affirmatively grants an aggrieved employee the right to bring an action "for and on behalf of himself . . . and other employees similarly situated." *Id*.  However, an "opt in" action under § 216(b) of the FLSA prohibits any person from being a plaintiff in an FLSA action unless they file a written consent with the Court. Actions pursued in such a representative capacity are referred to as "collective actions." *Id*.

In *Hoffmann-La Roche Inc. v. Sperling*, the United States Supreme Court held that courts have the discretion to implement the collective action procedure by facilitating the issuance of notice to potential class members.  493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). Commenting favorably upon collective actions, the Supreme Court noted:

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Id*. at 170.

The lack of a class-wide tolling of the statute of limitations in FLSA cases should cause the Court to favor providing notice to other similarly situated persons of their "opt in" rights at the earliest stage of the litigation. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997). Failing to provide such prompt notice frustrates the FLSA's broad remedial purposes and its specific grant of collective action rights to employees. *See Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) ("The Fair Labor Standards Act gives employees the right to bring their FLSA claims through a "collective action" on behalf of themselves and other "similarly situated" employees."); *Garza v. Chicago Transit Auth.*, 2001 WL 503036, at *3 (N.D. Ill. May 8, 2001) ("neither judicial economy nor the remedial purposes of the FLSA would be served by denying notice."); *Biddings v. Lake Cty.*, 2009 WL 2175584, at *2 (N.D. Ind. July 15, 2009) ("court-authorized notice serves the broad, remedial purpose of the FLSA and comports with the court's interest in managing its docket.").

## B. THE SEVENTH CIRCUIT APPLIES A LENIENT STANDARD FOR CONDITIONALLY CERTIFYING A FLSA COLLECTIVE ACTION

In recognition of the judicial efficiencies and cost-saving benefits of collective actions, courts in the Seventh Circuit follow a two-step approach when deciding whether the named plaintiff is similarly situated for the purpose of certifying a collective action. *See e.g., Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930, 933 (N.D. Ill. 2008); *Mielke v. Laidlaw Transit, Inc.*, 313 F.Supp.2d 759, 762 (N.D. Ill. 2004). Step one – which is the *only* step implicated by this motion – requires the Court to determine whether a collective action should be certified for the purposes of sending judicial notice and conducting discovery. *Smallwood v. Illinois Bell Telephone Co.*, 710 F.Supp.2d 746, 750 (N.D. Ill. 2010) (citations omitted). In the second step, following the completion of the "opt in" period and discovery, the defendant may ask the court

to "reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F.Supp.2d 745, 751 (N.D. Ill. 2011). During the second step, if the court finds insufficient similarities, it may revoke conditional certification or divide the class into subclasses. *Id.*; *Russell*, 575 F.Supp.2d at 933.

This District interprets the "'similarly situated' requirement leniently." *Rottman v. Old Second Bancorp, Inc.,* 735 F.Supp.2d 988, 990 (N.D. Ill. 2010) (citations omitted). "The court looks for no more than a 'minimal showing' of similarity." *Id.* (citations omitted). "Since the 'similarly situated' standard is a liberal one, it 'typically results in conditional certification of a representative class." *Id.* (citations omitted). To satisfy this low threshold, "the plaintiff must make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a *common policy or plan* that violated the law.'" *Russell,* 575 F.Supp.2d at 933 (quoting *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1045 (N.D. Ill. 2003)). "[W]here the plaintiffs have made a minimal showing that they are similarly situated to other employees who are subject to a common policy or plan that may violate the FLSA, the putative class has a right to know of the lawsuit so that they can consider whether it is in their interests to join." *Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *9 (N.D. Ill. Jan. 20, 2009).

In applying this low standard, courts granted conditional certification even in the absence of supporting declarations and/or consent forms submitted by putative collective members. *See Holmes v. Sid's Sealants, LLC*, No. 16-cv-821-wmc, 2017 U.S. Dist. LEXIS 194833, at *16, n.2 (W.D. Wis. Nov. 28, 2017); *Smith v. Safety-Kleen Sys.*, Civil Action No. 10 C 6574, 2011 U.S. Dist. LEXIS 40670, at *13-14 (N.D. Ill. Apr. 14, 2011). Similarly, courts have agreed that

differences in employment settings, such as job titles, departments or reporting relationships do not preclude conditional certification as long as plaintiffs and putative class members are affected by the same unlawful policies and practices. *See Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 850 (N.D. Ill. 2008) (holding "[d]efendant's argument about dissimilarities in the class is more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery.").

### C. PLAINTIFF'S ALLEGATIONS EASILY SATISFY THE STANDARD FOR CONDITIONAL CERTIFICATION

Courts in Circuit have routinely granted conditional certification to call center workers who alleged their employer failed to pay them for pre-shift computer boot-up activities. *See Russell*, 575 F. Supp. 2d at 937 (granting conditional certification to class of sales and service associates who alleged they were not paid for pre, mid, and post-shift computer boot-up/shut-down time); *Sharpe v. APAC Customer Servs., Inc.*, 2010 WL 135168, at *6 (W.D. Wis. Jan. 11, 2010) ("[P]laintiff has demonstrated that all of defendant's customer service representatives have the same job duties, work under the same operational and management structure and are subject to the same timekeeping, compensation and time management policies and practices."); *Swarthout v. Ryla Teleservices, Inc.*, 2011 WL 6152347, at *1-5 (N.D. Ind. Dec. 12, 2011) (granting conditional certification to customer service representatives for unpaid computer boot-up time); *Lamarr v. Illinois Bell Tel. Co.*, 2017 WL 2264348, at *3 (N.D. Ill. May 24, 2017) (conditional certification granted for call center representatives who alleged they were not paid for pre- and post-shift computer boot-up/shut-down time).

Similarly, courts in this Circuit have consistently held that evidence of an improper time rounding policy, applied uniformly to the putative class, is justification for providing notice of a pending FLSA lawsuit to the putative class members.

9

In *Smith*, 2011 U.S. Dist. LEXIS 40670, at *5, the plaintiff sought conditional certification based on claims that the defendant failed to compensate him and other employees for overtime worked before and after scheduled shifts while donning and doffing personal protective equipment, walking between the locker room and break room and showering, and that the defendant's rounding policy was unlawful because employees were not permitted to swipe in more than seven minutes prior to scheduled shifts. The court granted the plaintiff's motion, finding that his "declaration and the company's written policies [we]re sufficient for purposes of step one in the certification process." *Id.* at *9.

In *Nehmelman*, 822 F.Supp.2d 745, a former casino employee (a card dealer) filed suit against her employer, on behalf of herself and others similarly situated, seeking to recover unpaid wages due under the FLSA and the Illinois Minimum Wage Law. The plaintiff sought conditional certification and argued that the defendant's time clock and rounding policies, which plaintiff alleged were illegal, factually bound the putative class. *Id.*, 752. The Court agreed and held that plaintiff "presented sufficient evidence that she [was] similarly situated to the other dealers and slot reps with respect to an unwritten policy requiring them to clock in 7 minutes early." *Id.*, 753-754.

Similarly, in *Binissia v. ABM Indus., Inc.*, 2014 U.S. Dist. LEXIS 24160 , at *17 (N.D. Ill. Feb. 26, 2014), the plaintiff alleged that the defendant's rounding policy was "unequal in practice because employees were disciplined for arriving late." Noting that "[a] modest factual showing requires 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan,'" *id.*, at *10 (citations omitted), the court held "it is sufficient that Plaintiffs ha[d] shown that [Defendant] has a rounding policy that applied uniformly to all potential plaintiffs and that the policy appear[ed] to be inconsistent with

10

FLSA regulations." *Id.*, at *19.[4]

In this case, Defendant concedes in its answer that "its timekeeping policy rounds the time of Plaintiff and other Patient Access Representatives to the nearest fifteen-minute increment." (Doc. 17, ¶ 8.) Plaintiff has made a sufficient preliminary showing that Defendant's rounding policy did not comply with the FLSA. Like *Smith*, 2011 U.S. Dist. LEXIS 40670, at *5-14, and *Nehmelman*, 822 F. Supp. 2d at 754, Plaintiff alleges that Defendant prohibited her and other PARs from clocking in more than seven minutes prior to their scheduled shifts. Moreover, the facts here resemble those in *Binissia* inasmuch as PARs are subject to discipline for not being ready to handle calls by the start of their scheduled shift time, thus further preventing them from benefiting from Defendant's rounding policy. 2014 U.S. Dist. LEXIS 24160, at *17.

Accordingly, conditional certification should be granted and notice supplied to the putative Collective.

### D. THIS COURT IS AUTHORIZED TO ISSUE NOTICE TO POTENTIAL OPT-IN PLAINTIFFS AND SHOULD DO SO IMMEDIATELY

---

[4] Courts across the country have found that a common unlawful time rounding policy, such as the one in this case, is sufficient to establish the modest factual showing necessary at the first step of the collective certification process. *See e.g.*, *Russell*, 721 F. Supp. 2d at 820 ("If, as plaintiffs allege, Illinois Bell's time rounding and log out policies often caused plaintiffs to work unpaid overtime in increments of under eight minutes, then these company-wide practices may have resulted in unpaid overtime work.") *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 371 (N.D.W. Va. 2012) ("Conditional certification granted where "plaintiffs were systematically disadvantaged by the defendants' 'rounding' policy."); *McClean v. Health Sys., Inc.*, 2011 WL 6153091, at *7 (W.D. Mo. Dec. 12, 2011) ("Plaintiffs need not produce significant evidence of how the rounding practice operates in practice. Rather, it is sufficient that they present evidence of a common policy or plan affecting the class of plaintiffs that they seek to represent."); *Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1307 (D. Kan. 2010) (holding plaintiffs produced substantial allegations that defendant engaged in a practice of rounding time away from them, thereby denying them compensation for pre- and post-shift work, and "[t]he Court 'requires nothing more'" to conclude plaintiffs are similarly situated.); *Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819, 827 (E.D. Mich. 2009) (granting conditional certification where it was alleged that "Defendant's post-shift 'rounding' policy systematically disadvantaged [the putative class]."); *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1240-1241 (S.D. Ala. 2008) (holding that defendant may have raised a question of fact regarding whether the time rounding policy was lawful, but that does not warrant denying conditional certification).

"[A] court should 'monitor[ ] preparation and distribution of the notice as early in the case as is practicable.'" *Nehmelman*, 822 F. Supp. 2d at 763 (quoting *Hoffmann–La Roche*, 493 U.S. at 171, 110 S.Ct. 482); *see also Larsen v. Clearchoice Mobility, Inc.*, 2011 WL 3047484, at *2 (N.D. Ill. July 25, 2011) ("Because delaying the notification procedure until the completion of discovery could have the undesirable effect of preventing potential opt-in plaintiffs from presenting their FLSA claims, the Court declines to delay the notification procedure."). Accordingly, this Court should authorize issuance of the accompanying proposed form of Notice to all putative Collective members, without delay.

## E. PLAINTIFF IS ENTITLED TO OBTAIN A LIST OF ALL POTENTIAL COLLECTIVE MEMBERS

In order to facilitate timely and orderly notice to all potential Collective members, Plaintiff requests that the Court order Defendant to provide the full name, last known address, telephone number, e-mail and dates of employment of all putative Collective members within 14 days of the entry of the Order granting conditional certification.

In addition, the Court should permit Plaintiff's counsel to circulate the Notice by both first-class mail and e-mail. *See e.g.*, *Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016) ("dual postal mail and e-mail distribution is likely to advance the remedial purpose of the FLSA by increasing the likelihood that all potential opt-in plaintiffs will receive notice."); *Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 880 (N.D. Ill. 2017) ("this Court agrees with the many others that have concluded that because communication by email is 'the norm,' notice by email is appropriate and enhances the chance that the potential opt-in plaintiffs receive the notice.); *Watson v. Jimmy John's, LLC*, 2016 WL 106333, at *1 (N.D. Ill. Jan. 5, 2016) (authorizing notice by email because "nowadays, communication through email is the

norm.").[5]

Finally, thirty (30) days into the sixty (60) day notice period, Plaintiff seeks an order requiring a shortened supplemental notice to be sent via text message and e-mail to any putative Collective member for whom Defendant maintains a mobile number and/or email. Plaintiff proposes the following language for the reduced notice:

> *Attention all current and former Northshore Health System patient access representatives: You are eligible to join a pending class action lawsuit against Northshore Health System. You may be eligible to receive unpaid overtime wages and funds that are owed to you. Thirty days ago you were sent, via U.S. mail (to your latest address on file with Northshore Health System) and email, a detailed NOTICE explaining your legal rights. It is highly recommended that you check your email and mailing address for this NOTICE and read it carefully so you can make an informed decision. If you need a copy sent to you, please contact the attorney approved by the court to serve as counsel to the Plaintiff class: [Attorney name, attorney e-mail, and attorney telephone].*

(**Exhibit 2**, Reminder Email and Text Notice.)

A supplemental or reminder notice to class members furthers the goal of the FLSA to inform as many potential plaintiffs as possible of the collective action and their right to opt-in. *See Boltinghouse*, 196 F. Supp. 3d at 844; *Black v. P.F. Chang's China Bistro, Inc.*, 2017 WL 2080408, at *12 (N.D. Ill. May 15, 2017); *Soto v. Wings 'R US Romeoville, Inc.*, 2016 WL 4701444, at *9 (N.D. Ill. Sept. 8, 2016); *Zolkos v. Scriptfleet, Inc.*, 2014 WL 7011819, at *6

---

[5] Courts outside of this District also recognize the utility of distributing notice via email. *Ritz v. Mike Rory Corp.*, 2013 WL 1799974 at *5 (E.D.N.Y. Apr. 30, 2013), *Palma v. Metropcs Wireless, Inc.*, 2014 WL 235478 (M.D. Fla. Jan. 22, 2014) (citing *Stuven v. Texas De Brazil (Tampa) Corp.*, 2013 U.S. Dist. LEXIS 22240 at *17 (M.D. Fla. Feb. 19, 2013); *Cooper v. E. Coast Assemblers, Inc.*, 2013 U.S. Dist. LEXIS 10435 at *11 (S.D. Fla. Jan. 25, 2013) ("Plaintiff's counsel may e-mail the Notice in addition to its mailing."); *Phelps v. MC Commc'ns, Inc.*, 2011 U.S. Dist. LEXIS 84428 at *17 (D. Nev. Aug. 1, 2011) ("The Court will permit Plaintiffs to e-mail the notice to those employees for whom Defendants have e-mail addresses, as well as send it by first class mail. E-mail is an efficient, reasonable, and low cost supplemental form of notice, particularly where Defendants may lack current physical mailing address information for its former employees.").

(N.D. Ill. Dec. 12, 2014).[6]

Furthermore, in recognition of modern norms in communication, courts have routinely approved the distribution of notice by text message. *See Irvine v. Destination Wild Dunes Mgmt.*, Inc., 132 F.Supp.3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication. Political candidates now routinely seek out their supporters' cell phone numbers and email addresses because traditional methods of communication via regular mail and land line telephone numbers quickly become obsolete."); *see also Owens v. GLH Capital Enter., Inc.*, 2017 WL 2985600, at *5 (S.D. Ill. July 13, 2017); *Dempsey v. Jason's Premier Pumping Services, LLC*, No. 1:15-cv-703, 2015 WL 13121134, at *2 (D. Colo. Nov. 11, 2015); *Regan v. City of Hanahan*, 2017 WL 1386334, 2:16-cv-1077, at *3 (D.S.C. Apr. 17, 2017); *Landry v. Swire Oilfield Servs.*, No. 16-621, 2017 WL 1709695, at *39–40 (D.N.M. May 2, 2017); *Martin v. Sprint/united Mgmt. Co.*, No. 15–CV–5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015); *Vasto v. Credico (USA) LLC*, 2016 WL 2658172 (S.D.N.Y. May 5, 2016); *Eley v. Stadium Grp., LLC*, Civil Action No. 14–cv–1594 (KBJ), 2015 WL 5611331, at *4 (D.D.C. Sept. 22, 2015); *McGarry v. Chemix Energy Servs., LLC*, No. 2:15-cv-496 (S.D. Tex. July 19, 2016); *Spallone v. Soho University, Inc.*, No. 4:15-cv-1622 (Feb. 9, 2016); *Weaks II v. Nova Mud, Inc.*, 2:17-cv-121 (June 8, 2017); *Martin v.*

---

[6] *See also Morris v. Lettire Constr., Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate."); *Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1130 (D.N.M. 2017) (reminder notice permitted because "it serves the FLSA's broad remedial purpose by ensuring that as many potential plaintiffs as possible are informed of the collective action and their right to opt-in.").

*Sprint/United Mgmt. Co.*, 2016 U.S. Dist. LEXIS 352, at *59 (S.D.N.Y. Jan. 4, 2016).

Plaintiff requests that the Court allow her to send the shortened reminder notice via e-mail and text message to the potential opt-ins, as articulated above, reminding them about the collective action thirty (30) days after sending the initial notice. ***Exhibit 2***.

## F. THE COURT SHOULD GRANT A SIXTY (60) DAY OPT-IN PERIOD FOR ADDITIONAL PLAINTIFFS TO JOIN THIS LITIGATION

The Court should allow for an opt-in period of at least sixty (60) days. *See Smallwood*, 710 F. Supp. 2d at 753 ("This Court finds a 60–day period is a fair period that provides ample opportunity for prospective class members to opt in."); *Nehmelman*, 822 F. Supp. 2d at 765 (granting 60-day opt-in period).

## IV. CONCLUSION

For the reasons explained above, Plaintiff respectfully requests that the Court grant conditional certification and approve timely notice to the proposed Collective.

Respectfully Submitted,

Dated: March 13, 2018

/s/Jason T. Brown
Jason T. Brown (IL Bar No.: 6318697)
Nicholas Conlon *(Admitted Pro Hac Vice)*
Zijian Guan *(Admitted Pro Hac Vice)*
**JTB LAW GROUP, LLC**
500 N. Michigan Ave., Suite 600
Chicago, Illinois 60611
Phone: (877) 561-0000
Fax: (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
cocozguan@jtblawgroup.com

Matthew L. Turner *(Pending Pro Hac Vice)*
Charles R. Ash, IV *(Pending Pro Hac Vice)*
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
MTurner@sommerspc.com
crash@sommerspc.com

*Attorneys for Plaintiffs*