# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **SAKEENA BARRETT**, individually, and on behalf of others similarly situated<br><br>**Plaintiff,**<br><br>v.<br><br>**NORTHSHORE UNIVERSITY HEALTHSYSTEM,**<br><br>**Defendant.** | No. 1:17-cv-09088<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sakeena Barrett brings this putative collective action against her former employer, Defendant NorthShore University Health System ("NorthShore"), for alleged violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Barrett, a former Patient Access Representative ("PAR") for NorthShore, claims that she and other PARs occasionally worked more than 40 hours per week without overtime pay. Before the Court is Barrett's motion for conditional certification of the proposed class and approval of her proposed notice to potential class members. (Dkt. No. 19.) For the reasons set forth below, the motion for conditional certification is granted. The parties shall confer regarding the content of the notice and the means of distributing the notice, and shall submit either a joint proposal or competing proposals by October 4, 2019.

## A. Background

Barrett was previously employed by NorthShore as a Patient Access Representative ("PAR") at the company's Practice Support Call Center in Skokie, Illinois. (Pl.'s Mem. of Law in Support of Pl.'s Pre-discovery Mot. for Conditional Cert. ("Pl.'s Mem.") at Ex. 3 ¶ 2, Dkt. No. 20-3.) PAR is an entry-level position, in which the employee answers phone calls from NorthShore patients seeking to schedule an appointment with a physician, schedule a medical test, or ask a general question about NorthShore's services. (*Id.* at Ex. 3 Ex. A, Dkt. No. 20-3.) Barrett alleges that during her employment, she and other PARs occasionally worked more than 40 hours per week without overtime pay in violation of the FLSA. (*Id.* at Ex. 3 ¶ 4)

NorthShore requires PARs to clock in to document their hours and receive their hourly wages. (Pl.'s Mem. at 1) This timekeeping system rounds to the nearest fifteen-minute increment; for example, if Barrett clocks in at 8:52 a.m., the system records her as clocking in at 8:45 a.m. (*Id.* at 3). Likewise, if Barrett clocks in at 8:53 a.m., the system records her as clocking in at 9:00 a.m. (*Id.*) However, PARs were not permitted to clock in more than seven minutes before the start of their scheduled shift. (*Id.* at Ex. 3 ¶ 13; *see also* Ex. 4, Def.'s Mandatory Initial Disclosures, at 5 (stating that "the general rule is that [PARs] generally should not clock in more than seven minutes before the start of their shifts."))

According to Barrett, NorthShore had four common policies that worked in concert to deprive PARs of overtime pay. (Pl.'s Mem. at 3) First, NorthShore required PARs to be prepared to start handling calls at the start of their shift. (*Id.* at Ex. 3 ¶ 7) Second, in order to be adequately prepared to handle calls, PARs had to

2

do several time-consuming tasks such as logging into various computer programs and applications. (*Id.* at Ex. 3 ¶ 8) Barrett alleges that this process took between 8 to 24 minutes to complete. (*Id.*) Third, NorthShore rounds PAR's time to the nearest fifteen-minute increment (*Id.* at Ex. 3 ¶ 13) And finally, NorthShore prohibits PARs from clocking in more than seven minutes prior to their scheduled shift time. (*Id.* at Ex. 3 ¶ 14) Barrett asserts that she did not receive compensation for her pre-shift activities because NorthShore forbade her from clocking in more than seven minutes early and rounded down her time if she clocked in seven or less minutes early. (*Id.* at Ex. 3 ¶ 13) NorthShore denies that their rounding policy resulted in overtime denial, and disputes that PARs need to do anything other than clock in before the start of their shift. (Def.'s Mem. of Law in Opp'n to Pl's Mot. for Conditional Class Cert. ("Def.'s Mem.") at 1, Dkt. No. 31) NorthShore also disputes Barrett's timeframe for logging into applications, claiming that it takes between 30 seconds and four minutes to log into all computer programs, regardless of whether PARs do so on or off the clock. (Def.'s Mem. at 7).

Barrett claims that based on NorthShore's policies, she was not compensated for all the time she worked. And based on her personal observations and conversations with co-workers, Barrett asserts that her experience was shared by other PARs. (Pl's Mem. at Ex. 3 ¶¶ 11–12.) Barrett thus seeks to certify a class of "[a]ll current and former Patient Access Representatives employed by NorthShore University Health System ("Defendant") at any time from December 19, 2014, through the date of judgment in this case." (*Id.* at 1).

3

## B. Legal Standard

The FLSA provides that "no employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of no less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Section 16(b) of the FLSA allows for a collective action against any employer "by any one or more employees for and on behalf of [herself] or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

District courts have considerable discretion in deciding how such collective actions proceed. *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010) (citing *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170–72 (1989)). In this District, courts employ a two-step process. First, at the conditional certification and notice stage, plaintiffs must show that there are similarly situated employees who are potential claimants. *Russell v. Ill. Bell. Tel. Co.*, 575 F. Supp. 2d. 930, 933 (N.D. Ill 2008). To do this, plaintiffs must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id*. Although this standard is lenient, "a modest factual showing … cannot be founded solely on the allegations of the complaint." *DeMarco v. Northwestern Mem'l Healthcare*, No. 10 C 397, 2011 U.S. Dist. LEXIS 88651, at *4 (N.D. Ill. Aug. 10, 2011) (citing *Anyere v. Wells Fargo Co., Inc.*, No. 09 C 2769, 2010 U.S. Dist. LEXIS 35599, at *2 (N.D. Ill. Apr. 12, 2010) (internal quotations

omitted)). Plaintiffs "must provide an affidavit, declaration, or other support beyond the allegations in order to make the minimal showing of other similarly situated employees." *Muir v. Guardian Heating & Cooling Servs.*, No. 16 C 9755, 2017 U.S. Dist. LEXIS 35232, at *5 (N.D. Ill. Mar. 13, 2017) (citing *Molina v. Fist Line Sol'ns LLC*, 556 F. Supp. 2d 770, 786 (N.D. Ill. 2007)). If the plaintiff makes the requisite modest factual showing, the court may allow notice of the case to be sent to the similarly situated employees, who may then opt in as plaintiffs. *Russell*, 575 F. Supp. 2d at 933. Importantly, the court does not adjudicate the merits at this conditional certification stage, and factual disputes are resolved in favor of the plaintiff. *Holmes v. Sid's Sealants, LLC*, No. 16 C 821, 2017 U.S. Dist. LEXIS 194833, at *5 (W.D. Wisc. Nov. 18, 2017). The instant motion is Barrett's attempt to satisfy the first step in this process.

In the second step, "following the completion of the opt-in process and further discovery, the defendant may ask the Court to reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Russell*, 575 F. Supp. 2d at 933. Unlike step one where a lenient standard is used, "step two requires plaintiffs to overcome a more stringent evidentiary standard." *Smith v. Safety-Kleen Sys.*, No. 10 C 6574, 2011 U.S. Dist. LEXIS 40670, at *5 (N.D. Ill. Apr. 14, 2011). If the court determines that similarities do not exist, it may revoke the conditional certification. *Russell*, 575 F. Supp. 2d at 933.

**C. Discussion**

Here, Barrett claims that she was not compensated for all the time she worked, and she seeks to certify a class of "[a]ll current and former Patient Access Representatives employed by NorthShore University Health System ("Defendant") at any time from December 19, 2014, through the date of judgment in this case." (Pl's Mem. at 1) In addition to the allegations in her complaint, Barrett relies on her own declaration in which she describes NorthShore's policies as well as her observations of, and discussions with, fellow employees. As discussed above, Barrett asserts that NorthShore used four discrete policies to collectively deprive PARs of overtime pay: (1) PARs must be ready to handle calls at the start of their shifts, (2) to be ready, PARs must turn on their computers and log into various programs and applications, (3) time entries are rounded to the nearest 15-minute increment, and (4) PARs may not clock in more than seven minutes prior to their scheduled shift time. (*Id.* at 3–4.) Barrett further alleges that these policies were communicated to PARs by NorthShore managers during employee orientation. (*Id.* at Ex. 3 ¶ 14).

NorthShore raises several objections to conditional certification, but its assertions can be distilled down to two arguments: 1) Barrett has not offered additional employee declarations, and 2) Barrett's facts are wrong, and thus she has not met her burden. These two arguments will be discussed in turn.

In opposing conditional certification, NorthShore repeatedly objects that Barrett *only* provided her own declaration in support of her motion. However, Barrett "was not required to present additional declarations at the conditional certification stage." *Holmes*, 2017 U.S. Dist. LEXIS 194833, at *6-7 (granting conditional

6

certification when the plaintiff only provided his own declaration). "[T]here is no threshold number of co-worker declarations that a plaintiff must provide in order to make the requisite modest factual showing." *Anderson v. Minacs Grp. (USA) Inc.*, No. 16-13924, 2017 U.S. Dist. LEXIS 70513 at *28 (E.D. Mich. May 9, 2017). And Courts within this Circuit have granted conditional certification based on only one substantial declaration. *Holmes*, 2017 U.S. Dist. LEXIS 194833, at *16; *Smith*, 2011 U.S. Dist. LEXIS 40670, at *13-14; *see also Muir*, 2017 U.S. Dist. LEXIS 35232, at *11-12; *DeMarco*, 2011 U.S. Dist. LEXIS 88651, at *7-8; *contrast with Vasquez v. Ferrara Candy Co.*, No. 14 C 4233, 2016 U.S. Dist. LEXIS 110554, at *17-18 (N.D. Ill. Aug. 19, 2016) (denying conditional certification because the plaintiff's lone declaration failed to allege sufficient facts regarding other impacted employees). While Barrett's factual showing is a bit thin, it is sufficient to clear the low hurdle for conditional certification and notice. Barrett need only allege a "modest factual showing" that the defendant has a common policy or scheme that violates the law. Her declaration details the various policies at issue and how the seven-minute rule and rounding policy work together to prevent payment of overtime. (Pl.'s Mem. at Ex. 3 ¶ 13) She also alleges personal knowledge of, and discussions with, other impacted employees. (*Id.* at Ex. 3 ¶ 14) Barrett's declaration is enough to show that Barrett and other PARs like her may have been deprived of overtime compensation.

In addition, NorthShore makes significant arguments on the merits by supplying its own employee affidavits and disputing Barrett's factual allegations. NorthShore first attacks the second policy identified by Barrett, asserting that it

7

does not require PARs to work before the start of their scheduled shift. (Def.'s Mem. at 1.) According to NorthShore, the only program into which Barrett needs to log in by the time her shift begins is the timekeeping system, which supposedly takes mere seconds. (*Id.* at 1, Ex. B.) In response to the third and fourth policies identified by Barrett, NorthShore claims that PARs were given a grace period of three minutes after the scheduled start of their shifts to clock in and be ready to handle calls, negating any need to log in early. (*Id.* at 1–2, Ex. B.) NorthShore further alleges that if a manager did instruct Barrett regarding these policies, it was likely a "rogue manager" that does not rise to the level of a common policy or practice. (*Id.* at 14) Finally, NorthShore disputes Barrett's claim that she has observed other PARs logging in early by asserting that the PARs have staggered shift times and that from the vantage point of their workstations, each PAR can only see a "handful of other PARs." (*Id.* at 13–14, Ex. B.)

As evidence, NorthShore has offered the affidavits of ten PARs, all denying that NorthShore's policies have deprived them of full compensation for their time. (Def.'s Mem. Ex. B.) The PARs claim that they do not need to do anything other than open the timekeeping software to clock in. Barrett counters that NorthShore's affidavits must be disregarded as unreliable evidence from employees who are biased in NorthShore's favor (or "Happy Camper Declarations").

NorthShore's arguments in this regard "can best be described as defenses on the merits." *Russel*, 575 F. Supp. 2d at 935. Although the Court must "evaluate[] the record before it, including the defendant's oppositional affidavits," *Rottman v. Old*

8

*Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) (internal quotation marks omitted), it is inappropriate to evaluate parties' credibility or resolve factual disputes at this early stage. *Russel*, 575 F. Supp. 2d at 935; *Anyere v. Wells Fargo, Co., Inc., No. 09 C 2769, 2010 U.S. Dist. LEXIS 35599* at *3 (N.D. Ill. Apr. 12, 2010) (declining to decide which facts in the parties' competing affidavits should be accepted until step two of the certification process). Arguments on the merits are premature at the conditional certification and notice stage, as discovery has not yet begun. *Smith*, 2011 U.S. Dist. LEXIS 40670, at *8. Although NorthShore focuses heavily on its ten employee affidavits, Barrett "has not ha[d] the chance to depose or seek written discovery regarding those employees and others whom she claims are similarly situated." *DeMarco*, 2011 U.S. Dist. LEXIS 88651, at *7. Almost all of NorthShore's arguments involve factual determinations that the court will not resolve at this time.

While NorthShore does not deny that it employs a rounding policy, it argues that its policy is in fact lawful. (Def.'s Mem. at 12.) Rounding policies are not necessarily prohibited by the FLSA. *See* 29 U.S.C.A. § 216(b); 29 C.F.R. § 785.48(b). Rather, rounding is only unlawful if, over time, it results in "failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b). But just as in *Smith v. Safety-Kleen Sys., Inc.*, whether NorthShore's policy systematically undercompensates employees "is a factual question considered after discovery."[1] *Smith*, 2011 U.S. Dist. LEXIS 40670 at *9. At this stage, Barrett

---

[1] Barret cites *Smith* as an example where the court granted conditional class certification based solely on the plaintiff's own declaration. (Pl.'s Mem. at 10) NorthShore counters that

9

has sufficiently demonstrated a modest factual showing that NorthShore's rounding policy may violate the law.

For purposes of step one, Barrett has established NorthShore's policies and practices may violate the FLSA's overtime requirements as to her and other PARs at NorthShore's Skokie facility. Barrett has made the "minimal showing" required for certification. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847–48 (N.D. Ill. 2008).

## D. Conclusion

For the reasons stated above, the Court grants Barrett's motion to certify a collective action. The parties shall confer regarding the content of the notice and the means of distributing the notice, and shall submit either a joint proposal or competing proposals by October 4, 2019.[2]

E N T E R:

Dated: September 16, 2019

*Mary M Rowland*

---

*Smith* is easily distinguishable because the defendants in that case were not disputing any of the plaintiff's factual allegations, whereas NorthShore disputes many. (Def's Mem. at 15) But whether the defendants are or are not disputing the facts is inapposite at this early stage, where the court's role is not to resolve factual disputes or assess credibility, but to evaluate whether Barrett has provided a modest factual showing in support of her motion.
[2] Plaintiff's motion included a proposed notice but defendant's response did not comment on it. The court therefore provides this additional time for the parties to meet and confer.